UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HELEN SORRENTO,

                    Plaintiff,

      -against-

COUNTY OF ONONDAGA, NEW YORK;
SHERIFF TOBIAS SHELLEY; UNDERSHERIFF
JEFFREY PASSINO; CHIEF MATTHEW FISCHER;
CHIEF CRAIG BELCHER; CAPTAIN JEREMY YOUNG;
LIEUTENANT SEAN ANDREWS;
SERGEANT JOSHUA HILL; CHIEF DEPUTY
MAUREEN MURPHY; and JOHN DOE(S)
and JANE DOE(S), in their individual and official
capacities as officials, officers, agents, employees, and/or
representatives of Onondaga County and/or the Onondaga
County Sheriff's Office,

                    Defendants.

_____

5:25-cv-478 (AJB/MJK)

**<u>COMPLAINT</u>**

Jury Trial Demanded

       Plaintiff HELEN SORRENTO, by and through her attorneys, Bosman Law, LLC, as and

for a Complaint against Defendants COUNTY OF ONONDAGA, NEW YORK, SHERIFF

TOBIAS SHELLEY, UNDERSHERIFF JEFFREY PASSINO, CHIEF MATTHEW FISCHER,

CHIEF CRAIG BELCHER, CAPTAIN JEREMY YOUNG, LIEUTENANT SEAN ANDREWS,

SERGEANT JOSHUA HILL, CHIEF DEPUTY MAUREEN MURPHY, and JOHN DOE(S) and

JANE DOE(S), in their individual and official capacities as officials, officers, agents, employees,

and/or representatives of Onondaga County and/or the Onondaga County Sheriff's Office, alleges

as follows:

**PRELIMINARY STATEMENT**

      1. This is an action under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3); Title VII

of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 1983, based on rights under the First and Fourteenth Amendments to the United States Constitution; the New York State Human Rights Law, N.Y. Exec. Law § 296, et seq.; and New York State common law.

## JURISDICTION

2. Jurisdiction is conferred upon this Court pursuant to the Constitution and laws of the State of New York and the United States of America.

## VENUE

3. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff, Helen Sorrento, at all times relevant to this Complaint, is a female citizen of the United States and a resident of the County of Onondaga and State of New York. She was at all times relevant herein an employee of the County of Onondaga and the Onondaga County Sheriff's Office since August 2014.

5. Defendant, County of Onondaga, New York is a municipal corporation organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at 421 Montgomery Street, Syracuse, New York 13202.

6. The Onondaga County Sheriff's Office is part of the municipal corporation of the County of Onondaga, organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at 407 South State Street, Syracuse, New York 13202.

7. At all times relevant hereto, Defendant County of Onondaga and the Onondaga County Sheriff's Office employed the hereinafter named individuals and the Plaintiff herein. The

said County of Onondaga and the Onondaga County Sheriff's Office is by law responsible for the wrongdoing of officers and employees of the Onondaga County Sheriff's Office and by law responsible for the direct participation and endorsement of the unconstitutional and unlawful customs, policies and practices at issue herein. These Defendants were also aware, through their officers, legislators, and agents, of these unlawful customs, policies and practices, and deliberately and/or negligently failed to take action to correct the unlawful customs, policies, and practices.

8. Defendant Tobias Shelley, at all times relevant to this Complaint, is the duly elected Sheriff of Defendant Onondaga County and as such is the employer of Plaintiff and a policymaking official within the Onondaga County Sheriff's Office, carrying out the directives and enforcing and enacting policies and acts, both as recommended by him and as endorsed by the Onondaga County Sheriff's Office and Defendant County. He is responsible, by law, for enforcing the rules and regulations of the State of New York and County of Onondaga for ensuring that employees of the Onondaga County Sheriff's Office obey the laws of the State of New York and the United States. As the Sheriff, he had the power to make personnel decisions regarding Plaintiff's employment.

9. Defendant Jeffrey Passino, at all times relevant to this Complaint, is the duly appointed Undersheriff of Defendant Onondaga County and as such is the employer of Plaintiff and a policymaking official within the Onondaga County Sheriff's Office, carrying out the directives and enforcing and enacting policies and acts, both as recommended by him and as endorsed by Defendant Sheriff Shelley, the Onondaga County Sheriff's Office, and Defendant County. He is responsible, by law, for enforcing the rules and regulations of the State of New York and County

of Onondaga for ensuring that employees of the Onondaga County Sheriff's Office obey the laws

of the State of New York and the United States. As the Undersheriff, he had the power to make

and/or participate in personnel decisions regarding Plaintiff's employment.

10. Defendant Matthew Fischer, at all times relevant to this Complaint, was a duly

appointed Chief for the Onondaga County Sheriff's Office (Police) and as such is the employer of

Plaintiff. He is responsible, by law, for enforcing the rules and regulations of the State of New

York and County of Onondaga for ensuring that employees of the Onondaga County Sheriff's

Office obey the laws of the State of New York and the United States. As the Chief of the Police

of the Onondaga County Sheriff's Office, he had the power to make and/or participate in

personnel decisions regarding Plaintiff's employment.

11. Defendant Craig Belcher, at all times relevant to this Complaint, was a duly appointed

Chief for the Onondaga County Sheriff's Office (Special Enforcement) and as such is the

employer of Plaintiff. He is responsible, by law, for enforcing the rules and regulations of the

State of New York and County of Onondaga for ensuring that employees of the Onondaga

County Sheriff's Office obey the laws of the State of New York and the United States. As a Chief

in the Onondaga County Sheriff's Office, he had the power to make and/or participate in

personnel decisions regarding Plaintiff's employment.

12. Defendant Jeremy Young, at all times relevant to this Complaint, was a duly

appointed Lieutenant (presently a Captain) for the Onondaga County Sheriff's Office and as such

is the employer of Plaintiff. He is responsible, by law, for enforcing the rules and regulations of

the State of New York and County of Onondaga for ensuring that employees of the Onondaga

County Sheriff's Office obey the laws of the State of New York and the United States. As one of

Plaintiff's supervisors, he had the power to make and/or participate in personnel decisions regarding Plaintiff's employment.

13. Defendant Sean Andrews, at all times relevant to this Complaint, was a duly appointed Sergeant (presently a Lieutenant) for the Onondaga County Sheriff's Office and as such is the employer of Plaintiff. He is responsible, by law, for enforcing the rules and regulations of the State of New York and County of Onondaga for ensuring that employees of the Onondaga County Sheriff's Office obey the laws of the State of New York and the United States. As one of Plaintiff's supervisors, he had the power to make and/or participate in personnel decisions regarding Plaintiff's employment.

14. Defendant Joshua Hill, at all times relevant to this Complaint, was a duly appointed Sergeant for the Onondaga County Sheriff's Office and as such is the employer of Plaintiff. He is responsible, by law, for enforcing the rules and regulations of the State of New York and County of Onondaga for ensuring that employees of the Onondaga County Sheriff's Office obey the laws of the State of New York and the United States. As one of Plaintiff's supervisors, he had the power to make and/or participate in personnel decisions regarding Plaintiff's employment.

15. Defendant Maureen Murphy, at all times relevant to this Complaint, was a duly appointed Chief for the Onondaga County Sheriff's Office (Administration) and as such is the employer of Plaintiff. She is responsible, by law, for enforcing the rules and regulations of the State of New York and County of Onondaga for ensuring that employees of the Onondaga County Sheriff's Office obey the laws of the State of New York and the United States. As the Chief of Administration in the Onondaga County Sheriff's Office, she had the power to make and/or participate in personnel decisions regarding Plaintiff's employment.

16. Defendants John Does and Jane Does are individuals not yet known to the Plaintiff but who, with the other Defendants aided, abetted, or otherwise individually committed acts in violation of Plaintiff's rights. Once their identities are ascertained, the names of those individuals will be substituted in place of the John Does and Jane Does designation(s).

17.  All of the above-named Defendants are responsible for the establishment and perpetuation of a hostile work environment and discriminatory and retaliatory policies, customs, practices and habits complained of herein and also aided and abetted the unlawful conduct described herein. Defendants all are equally responsible and legally accountable for the unlawful conduct of each other for their actions and/or failing to intercede and prevent the unlawful, hostile, discriminatory and retaliatory conduct.

18.  During all times mentioned in this Complaint, Defendants were acting within the scope of their employment and under color of law, namely, under color of the Constitution, statutes, laws, charters, ordinances, rules, regulations, customs, and usages of the State of New York and the City of Syracuse in the State of New York.

## CONDITIONS PRECEDENT

19. On or about December 4, 2024, Plaintiff filed a complaint of discrimination, hostile work environment, and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC). Plaintiff's EEOC complaint was cross-filed with the New York State Division of Human Rights pursuant to a work-share agreement between the two agencies.

20. On or about December 4, 2024, a verified Notice of Claim was duly and timely served on Defendant County of Onondaga. At least 30 days has elapsed since service of such Notice of Claim and payment thereof has been refused.

21. On or about February 28, 2025, the EEOC issued Plaintiff a Right to Sue letter.

22. Plaintiff commences this action within the time limits allotted therefor.

**FACTS**

23.  This Complaint is in all respects based upon past and continuing and ongoing harm and injury caused by Defendants in their discriminatory and retaliatory acts and policies.  Such acts and policies were illegally imposed on Plaintiff by Defendants employing and endorsing a policy which excludes women from certain assignments, positions of visibility, authority, and power, and denying women assignments, transfers, or promotions which lead to supervisory and management opportunities.  Denying women access to these assignments leads to lower pay, fewer benefits, opportunities and disrespect in their professional community.

24. Defendants have subjected women to discriminatory and disparate treatment in that complaints and statements by men are treated as more reliable and believable than those by women. Additionally, Defendants do not address or treat hostile and discriminatory acts against women or other minorities in the Sheriff's Office seriously and, to the contrary, implicitly condone such conduct by their inaction and/or sanctioning of such conduct.

25.  Plaintiff holds the position of Deputy Sheriff Police Officer for the Defendant Onondaga County Sheriff's Office in its Uniform Division.  Plaintiff is a female and was, at times relevant hereto, pregnant and/or a new mother, and as such, a member of protected classes. Additionally, at all times relevant hereto, Plaintiff was married and had children.

26.    Plaintiff is a civil service employee with the State of New York and County of Onondaga and a member of a Union representing such civil servants. Plaintiff was and is therefore entitled to the protection of the contract in effect as entered into by the Onondaga

County Sheriff's Office with its employees. Such contract provides for the fair and equal treatment in matters of pay and terms of employment including discipline and sanctions for misconduct of employees without regard to gender, race, age, or other classification. In her position as Police Officer, Plaintiff always performed her duties in a fully competent and professional manner and received positive performance evaluations. Prior to becoming pregnant, Plaintiff never had any disciplinary history whatsoever.

27. On or about August 2017, Plaintiff went out of work to have her first child. She returned on or about February 2018. Pursuant to rules of the Defendants County of Onondaga and/or the Onondaga County Sheriff's Office then in effect, Plaintiff was forced to exhaust all of her accrued leave before she was able to obtain unpaid FMLA leave. Such rules violate the Human Rights Law.

28. After returning from maternity leave, Plaintiff was denied the opportunity to become a Field Training Officer (FTO). She applied and was interviewed by a panel of superior officers, namely, Lieutenant Caruso, Sergeant Brian Zinsmeyer and Sergeant Carl Kruger. The only eligibility criterion required for the FTO position is three years experience as a Deputy Sheriff on road patrol. Plaintiff was denied the opportunity to be an FTO because, according to Lieutenant Caruso, Sergeant Zinsmeyer did not want her because she had been off the road too long "due to her pregnancy". Plaintiff had sufficient experience even excluding her pregnancy-related leave. Additionally, Defendants, prior to this time, selected Deputy Brown, a male, as an FTO even though he had less than the three years experience required. Specifically, Brown had only two years of experience as a Road Patrol Deputy, with much of that time absent on medical leave. Plaintiff was refused selection as an FTO due to her gender and/or familial status.

29. In or about late 2018 or early 2019, Plaintiff was subjected to overtly hostile treatment by a male superior officer and discriminatory discipline initiated by him. Her supervisor, Sergeant Murphy, acted disrespectfully towards Plaintiff in the presence of a civilian in or about February 2019. The civilian reported to the Sheriff's Office to receive civil process. When Plaintiff attempted to convey information she obtained from a technical advisor of the Sheriff's Office, Sergeant Murphy interrupted her, told her he was "all set," and then dismissively gestured her away with his hand. When Plaintiff attempted again to convey the information, he expressed, in an angry tone, "I'm all set." He then issued a disciplinary memorandum to Plaintiff that falsely stated that **she** was rude, disrespectful, and "petulant." Sergeant Murphy's behavior towards Plaintiff was discriminatory and unlike the professional treatment he exhibits towards male officers. Plaintiff complained of Sergeant Murphy's behavior to, among others, Lieutenant Caruso, who refused to take action on the basis that he needs to "back his people." Upon information and belief, non-minority male officers' complaints are taken seriously and properly addressed.

30. Beginning in early 2020, Plaintiff was subjected to a series of hostile encounters with Sergeant Amy Bollinger. Sergeant Bollinger was in charge of the "Crisis Intervention Team." (CIT). Plaintiff was, and remains, the CIT Coordinator. The objective of the CIT is to develop strategies to enhance community and officer safety.

31. As part of Plaintiff's duties as CIT Coordinator, she has contact with superior officers inside and outside the agency. In this regard, Plaintiff was in contact with Lieutenant Dykes, who was previously her direct supervisor and with whom she had developed a trusted professional relationship. On multiple occasions, Sergeant Bollinger criticized Plaintiff for communicating

with Lieutenant Dykes, claiming it was "outside the chain of command." Her statements to

Plaintiff were discriminatory, and intimated that there was something inappropriate about

Plaintiff's contact with Lieutenant Dykes. Numerous male officers have similar relationships

with superior officers, including Lieutenant Marty Nerber and then-Deputy Robert Martin,

Lieutenant Young and Deputy Anderson, and Lieutenant Young and Deputy Schruise.

32. On or about April 29, 2022, Plaintiff was excused from work to have her second

child. She returned on or about November 2022.

33. Immediately upon returning, Plaintiff was directed by Defendant Sergeant Andrews to

meet in his office. At this meeting, Sergeant Andrews presented Plaintiff with a memorandum

about a policy from 2009 entitled the "Nursing Mothers" directive. The actual directive was not

provided to Plaintiff. Sergeant Andrews advised Plaintiff that she was not permitted to express or

pump breast milk for her baby in her post and that she was required to respond to the South

Station, located approximately 20 to 30 minutes away from her assigned area, and use the

sergeant's office there to pump instead. Plaintiff complained to Sergeant Andrews that such

directive imposed an undue burden and that it interfered with her duties as she would have to

leave her post and travel for about an hour and a half every time she needed to do it. He indicated

that it was fine and asked how many times she needed to pump. She stated at least two to three

times a shift, specifically at about 12:30 p.m., 4:30 p.m., and 7:30 p.m.

34. That same day, Plaintiff was dispatched to a call at about 2:30 p.m. At about 4:00

p.m. Plaintiff and Sergeant Andrews spoke and he instructed Plaintiff to summon an Evidence

Technician (ET) to the scene. Even though it was about the time that she needed to leave,

Sergeant Andrews did not make any alternative arrangements to relieve Plaintiff on time.

Apparently, he had an expectation that Plaintiff would wait until the ET arrived. After waiting for the ET to arrive, Plaintiff was eventually able to leave. She went to her house to pump because her breasts were engorged and she was in pain.

35. Plaintiff thereafter complained to Defendant Lieutenant Young about Sergeant Andrews' directive that she could not pump breast milk at her post. She stated that the policy on which he was relying was meant for employees who work in a building and that it was unreasonable to expect her to travel back and forth to the South Station to pump. He agreed and indicated that he would bring Plaintiff's complaints "up the chain."

36. On November 12, 2022, Plaintiff again complained to Sergeant Andrews about the implementation of the policy against her. She noted that it was negatively impacting her work environment because she was having to leave her post for extended periods of time and that it was causing her significant physical discomfort because she was having to drive so far to pump. Plaintiff stated that it was unfair that she was mandated to use the South Station when she could pump at a location in her area. She raised the fact that deputies have routinely been allowed to go to their houses briefly if they lived within their post. He responded that no one is allowed to go to their house without first letting him know. However, numerous officers, including Plaintiff previously, stop briefly at their houses while on duty. This was the practice that Plaintiff observed and followed for over eight years working at the Onondaga County Sheriff's Office. Upon information and belief, no officers were ever disciplined for or advised that this practice was disallowed prior to Plaintiff's request to pump at home. Plaintiff explained this to Sergeant Andrews and, in response, he stated that she was not allowed to go to her house to pump and that she was not allowed to go there for any other reason without first letting him know. Plaintiff

offered an alternative location, i.e., a day care facility in her area, but Defendants similarly rejected such location. The policy was directed at Plaintiff due to her status as a woman and nursing mother.

37. On November 19, 2022, Plaintiff spoke with Lieutenant Young and reiterated her complaints about the enforcement of the aforementioned policy with respect to her need to pump. Plaintiff asked him if he had yet raised her complaints with the administration and he responded that he and Captain Ferrara would be bringing the issue to the Sheriff's Office Human Resources official Robert Hayden. Plaintiff then raised the issue of not being allowed to go to her house during her shift. She advised Lieutenant Young of Sergeant Andrews' position that deputies are not allowed to go to their house for any reason. Young agreed with Sergeant Andrews' position, but when asked whether this protocol was in writing or whether she could obtain something in writing to confirm this alleged protocol, he told her no.

38. On November 20, 2022, Plaintiff reported to the South Station to pump. In accordance with what she had been directed to do, she asked Sergeant Walton whether she could use his office to pump. He obliged, but was clearly sick at the time. Plaintiff did her best to sanitize the space using cleaning spray. After she was done in his office, Walton advised her that he had bronchitis.

39. On November 21, 2022, Plaintiff again reported to the South Station to pump. After she was done, she encountered Lieutenant Young who advised her that they were going to be switching the area for her to pump. Lieutenant Young instructed her to use the juvenile room in the South Station. Lieutenant Young then suggested that Plaintiff communicate directly with Mr. Hayden to seek an adjustment to the policy.

40. Prior to December 19, 2022, Sergeant Andrews approved Plaintiff's requested sick leave for her to attend a medical appointment on that date.

41. At about 11:45 a.m. on December 19, 2022, Sergeant Andrews ordered Plaintiff to report to a call. She advised him that another deputy may have to take the call because she had to pump and had a doctor's appointment at 1:00. Sergeant Andrews instructed another deputy to respond to said call.

42. On December 21, 2022, Plaintiff was summoned into Sergeant Andrews' office. Both he and Lieutenant Zinsmeyer were present. Sergeant Andrews accused Plaintiff of disrespect and insubordination relative to their interaction on December 19, 2022. Plaintiff expressed that she did not believe she was disrespectful. Plaintiff additionally expressed that she was embarrassed because she was again having to talk about needing to pump in front of other members of the agency. Sergeant Andrews asked Plaintiff whether she could have responded in a "different way," reflecting discriminatory scrutiny and a total lack of regard for the grossly discriminatory conduct that was being visited upon Plaintiff. She advised him that she had no intention of being disrespectful and was just being direct and, therefore, she could not think of any other way to verbalize such a simple statement. On this occasion, Plaintiff began to cry. She advised Sergeant Andrews that she had to pump earlier that day because the doctor's appointment was for a mammogram and ultrasound for a lump she had found in her breast.

43. During this time period, Sergeant Andrews requested that Plaintiff repeatedly advise of the times that she needed to pump, and more than once in front of Plaintiff's co-workers during roll call. This was deliberate, demeaning, unnecessary, and extremely embarrassing for Plaintiff; she was singled out, causing her to suffer extreme emotional distress.

44. Plaintiff, through her own efforts, eventually secured an alternative location, closer to her assigned area, to pump; the restroom/locker room of the Town of DeWitt Police Department. While it lacked privacy, Plaintiff settled on this location because it was the only location that Defendants approved, other than the South Station. It was several months before even this alternative location was arranged.

45. During this time period and thereafter, Plaintiff was subjected to extra scrutiny and dismissive treatment by Sergeant Andrews and others in the administration. For example, Sergeant Andrews reported to Plaintiff that someone in the administration complained about the length of her hair during the academy graduation ceremony in December 2022. The length of Plaintiff's hair was just barely touching her collar. He instructed Plaintiff to obtain a haircut or put her hair up. Plaintiff complied. Sergeant Andrews' instruction was both discriminatory and retaliatory inasmuch as members of the agency generally, but men in particular, are not held to such an exacting assessment of their appearance.

46. Additionally, in January 2023, Plaintiff's workstation was stripped from her without any advance notice. Her desk items were removed from her desk, put in a box, and left on the floor. Her computer was also unplugged and left on the floor. Such conduct is not imposed on non-minority male members of the Sheriff's Office or to those who have not complained of discrimination. In 2023, Plaintiff also applied for positions in the Criminal Investigation Division (CID). At all times relevant hereto, Plaintiff was qualified to hold said positions. In fact, at such time, Plaintiff was a Certified Polygraphist, which made her uniquely qualified to hold a position in CID.

47. In May 2023 and again in September 2023, Plaintiff was interviewed by a panel of

supervisory members of the Sheriff's Office for positions in CID. She answered all questions posed to her by the Interview Committee and they appeared satisfied with her answers. During the course of those interviews, Plaintiff was again discriminated against when she was asked whether she would be able to manage the hours and the on-call availability due to her having children. She consistently answered yes, however, she was repeatedly challenged with a follow-up question whether she was "sure" she could manage the position with children. She answered in the affirmative.

48. After the May 2023 and September 2023 interviews, male deputies who had less seniority and experience than Plaintiff were selected, including Zach Anderson, Sean Coyne, Isabella Carroll, and Trevor Wenz. Upon information and belief, Plaintiff's gender, familial status, and/or Plaintiff's protected activity relative to breast pumping accommodations and complaints of disparate treatment were motivating and/or determining factors in her non-selection for positions in CID.

49. In 2023, Plaintiff took the Civil Service test required for promotion to sergeant. She scored a 90 on the test.

50. At all times relevant hereto, Plaintiff was qualified to hold the sergeant position and was within the "top three" eligible to be selected under the applicable Civil Service Law and rules.  Additionally, her performance has been above average as demonstrated by her performance evaluations and she has no disciplinary history. Further, Plaintiff has a diversity of experience that makes her a uniquely qualified candidate. Among other things, she served as a Naval Combat Information Operator of the Canadian Navy and was as an instructor at the CNY Regional Law Enforcement Academy. She also served as the Crisis Intervention Team

Coordinator for the Sheriff's Office and was a Certified Polygraphist.

51. After responding to a canvass letter, Plaintiff was interviewed by a panel of supervisory members of the Sheriff's Office.  She answered all questions posed to her by the Interview Committee and they appeared satisfied with her answers.

52. In January 2024, Defendants promoted Anthony Aloi, Robert Martin, and Justin Sorrento, all men, to the sergeant position instead of Plaintiff. At that time, Plaintiff was contacted by Defendant Chief Fischer who advised her that the decision was "very close," but that Deputy Justin Sorrento had beat her by only "two points" during the oral interview. However, Plaintiff's qualifications exceeded those of Justin Sorrento, thus exhibiting discriminatory bias toward Plaintiff.

53. On or about March 20, 2024, Plaintiff was advised by Chief Fischer at Captain Dykes' promotion ceremony to "wrap up your cases" because she was going to be promoted soon. Her anticipated elevation to sergeant was again reported to her in April 2024, when Plaintiff was advised by Defendant Chief Belcher that she was going to be promoted and that it was going to be a sergeant position in training.

54. In July 2024, Plaintiff received another canvass letter inquiring as to whether she continued to be interested in the sergeant position. She completed the form and returned same to the Sheriff's Office. Thereafter, Plaintiff was contacted by Chief Fischer and advised that she was again not selected. Plaintiff inquired whether they still intended to proceed with a sergeant position in training and Chief Fischer responded, "Helen, sometimes I think I know which way the train is going, and then it completely changes direction." He expressed that they were short on the road and that he anticipated another opening in August. Defendants promoted Craig

Walters and Brandon Messer, both men, to the sergeant position. Both Mr. Walters and Mr. Messer had lower Civil Service test scores than Plaintiff. Additionally, both had less experience and/or seniority in the Sheriff's Office compared to Plaintiff and were otherwise less qualified.

55. In August 2024, Plaintiff received yet another canvass letter. Like she had done in the past, she completed the form and returned it to the Sheriff's Office. Thereafter, Plaintiff was contacted by Chief Fischer and advised that she once again was not selected. Instead, on or about September 6, 2024, Defendants selected Matthew Cobb, a man, for the sergeant position. Mr. Cobb had a lower score on the Civil Service test than Plaintiff and had only a few years on the job with the Sheriff's Office and was therefore less qualified than Plaintiff.

56. On or about September 10, 2024, Plaintiff met with Chief Fischer and Chief Belcher regarding her repeated non-selection for promotion. They reported to Plaintiff that her interview went very well and she received high marks. They indicated that she was not promoted based on information provided by peers and supervisors. They showed Plaintiff a list of purported criticisms from the year prior for the first time. They indicated that the list of criticisms was based on anonymous feedback from both co-workers and her last two supervisors. However, based on the content of this "anonymous feedback," it was evident to Plaintiff that the criticism came from Sergeants Andrews and Hill and not from any co-workers. Most of the criticisms, ostensibly by Sergeant Andrews, were directly connected with Plaintiff's complaints about the way she was treated with respect to pumping-related accommodations and the obstacles put in her way by Andrews and the Sheriff's Office concerning pumping. These complaints constitute protected activity under the law. The remainder of the criticisms, ostensibly by Defendant Sergeant Hill, centered around a single instance in which Plaintiff was alleged to have challenged

-17-

him, but she was never counseled, reprimanded, or otherwise disciplined for it. During this meeting, Plaintiff complained to Chief Fischer that the criticisms he cited were biased and untrue. In response, Chief Fischer suggested that they may obtain a re-evaluation of Plaintiff from current supervisors and peers.

57. Also during this meeting, Chief Fischer told Plaintiff that if a sergeant position in training were to become available, she would be the "best fit," but that, due to her low peer and supervisor assessments, she was not the ideal candidate for a patrol sergeant. Upon information and belief, peer and supervisor evaluations prior to these promotions were never used in connection with promotion decisions. Upon information and belief, their invocation here is a pretext for discrimination and retaliation against Plaintiff based on her gender, familial status, and protected activity.

58. In late September 2024, Plaintiff contacted Lieutenant Cicirello and inquired as to why she had not been utilized as an FTO in two years. Lieutenant Cicirello responded, that Lieutenant Young told him about two years ago that she "wasn't to be used." Plaintiff's gender, familial status, and/or her protected activity were motivating and/or determining factors in her non-selection for FTO assignments.

59. In October 2024, Captain Dykes reported to Plaintiff that he discussed her non-selection for promotion with Defendant Passino. In explaining the reason for not selecting her, Defendant Passino stated that Plaintiff "doesn't do as she is told." There is no basis for Defendant Passino's statement; Plaintiff has never been charged, counseled, or otherwise admonished for insubordination or not doing "as she is told." Further, upon information and belief, this criticism is not levied against male deputies in the department and is rooted in a

stereotypical belief that women in the workplace must be directed, or "told what to do" by men.

60. In November 2024, Plaintiff learned from her direct supervisor, Sergeant Martin and a co-worker that they were asked to provide evaluations of Plaintiff, ostensibly for the purpose of re-evaluating Plaintiff for promotion based on feedback from her current supervisor and co-workers. Sergeant Martin and Plaintiff's co-worker, who were highly supportive of her candidacy for promotion, advised her that they gave her glowing reviews. In fact, multiple co-workers of Plaintiff gave her glowing reviews.

61. On or about December 4, 2024, Plaintiff served a Notice of Claim on Defendants County of Onondaga and the Onondaga County Sheriff's Office alleging that she was discriminated against on the basis of gender, familial status, and retaliated against for complaining about discrimination relative to her employment as a Deputy Sheriff. Additionally, on or about said date, Plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC).

62. Shortly thereafter, Plaintiff's co-workers reported to her that there was a lot of discussion about her and her legal actions against the County and the Sheriff's Office. Sergeant William June asked some members of Plaintiff's squad if it was "weird in roll call now with Helen suing" and falsely advised them that Plaintiff was leaving the Sheriff's Office and had been hired by another agency.

63. On or about December 24, 2024 - a day Plaintiff was off - Defendant Shelley spoke to Plaintiff's squad as a group and Plaintiff learned that he stated, in sum or substance, that the Sheriff's Office, under his command, has the fairest and best promotional practices of any of the local law enforcement agencies. Upon information and belief, Defendant Shelley's comments

were in response to Plaintiff's Notice of Claim and/or EEOC complaint.

64. On or about January 9, 2025, the Sheriff's Office announced to all members, by letter of said date, "new mothers accommodations." This letter was signed by Defendant Chief Deputy of Administration, Maureen Murphy. Upon information and belief, these new accommodations were adopted in response to Plaintiff's Notice of Claim and/or EEOC complaint.

65. On or about January 13, 2025, Plaintiff received another canvass letter inquiring as to whether she continued to be interested in the sergeant position. She completed the form and returned same to the Sheriff's Office. Plaintiff was not selected, despite the fact that the Sheriff's Office conducted a re-evaluation of Plaintiff a mere two months earlier and she received glowing reviews from her current supervisor and co-workers. Departing from past practice, Plaintiff was notified by e-mail of her non-selection by Defendant Murphy. For each of the earlier promotion decisions, Plaintiff received a telephone call from Defendant Fischer advising her of her non-selection. Defendants promoted Kathleen Herrington who had a lower score on the Civil Service test and fewer years on the job with the Onondaga County Sheriff's Office than Plaintiff. Upon information and belief, Defendants' selection other than Plaintiff was retaliatory because of her Notice of Claim and EEOC complaint.

66. On or about April 1, 2025, Plaintiff received another canvass letter inquiring as to whether she continued to be interested in the sergeant position. She completed the form and returned same to the Sheriff's Office. Again departing from past practice, Plaintiff was notified by e-mail of her non-selection by Defendant Murphy. Defendants promoted Justin Hickok who was less qualified and also had a lower score on the Civil Service test and fewer years on the job than Plaintiff.

67. Upon information and belief, Defendants' refusal to promote Plaintiff was based, in whole or part, by Plaintiff's protected activities and/or her gender and/or familial status.

68. Defendants have a long and tortured history with respect to their treatment of women and minority employees. Defendants routinely subject women and other minorities to stricter scrutiny and application of rules or guidelines with respect to sick time, workplace injury, performance, promotions, assignments, training, discipline, and on the job and off the job conduct. Defendants unfairly and routinely endorse and believe the word of White male employees over that of female and other minority employees. Additionally, women and other minorities are subjected to retaliation for complaining about discrimination. Despite having ample notice of these customs, patterns and practices of behavior which are notoriously sexist, retaliatory and discriminatory, Defendants fail to put sufficient or appropriate resources to adequately monitor or address these issues to insure that such treatment and discriminatory conduct is eliminated.

69. As a result of its unconstitutional and unlawful customs, policies, and practices, the Sheriff's office has very few female deputies and even fewer occupying positions of authority. Male deputies are given preference in virtually every aspect of employment in the Sheriff's Office, including promotions. The few woman who do occupy positions of rank, including Aimee Edwards and Kate Loveland, were promoted only after multiple cycles where men were promoted over them. There are only two female sergeants assigned to road patrol out of approximately 16.

70. At all times relevant hereto, the Onondaga County Sheriff's office has received significant funding in the form of grants from both the United States and State of New York

governments.

71. By accepting the Federal grants, the Sheriff's Office and/or Onondaga County agreed

to a number of stringent Federal requirements for equal employment opportunity.  *See* 28 C.F.R.

§ 42.301-308.  The Sheriff's Office and/or County were required to create and maintain Equal

Employment Opportunity Program (EEOP) reports.  *See* 42 C.F.R. § 42.301-42.308.  They also

had to certify their compliance.  *See* 28 C.F.R. § 42.305.    Toward that end, among other things,

the Sheriff's Office and/or County had to document and preserve documents reflecting:

> (b) The number of disciplinary actions taken against employees
> by race, sex and national origin within the preceding fiscal
> year, the number and types of sanctions imposed (suspension
> indefinitely, suspension for a term, loss of pay, written
> reprimand, oral reprimand, other) against individuals by race,
> sex and national origin.
>
> (c) The number of individuals by race, sex and national origin
> (if available) applying for employment within the preceding
> fiscal year and the number by race, sex and national origin (if
> available) of those applicants who were offered employment
> and those who were actually hired. If such data is unavailable,
> the recipient should institute a system for the collection of such
> data.
>
> (d) The number of employees in each job category by race, sex
> and national origin who made application for promotion or
> transfer within the preceding fiscal year and the number in each
> job category by race, sex, and national origin who were
> promoted or transferred.
>
> (e) The number of employees by race, sex, and national origin
> who were terminated within the preceding fiscal year,
> identifying by race, sex, and national origin which were
> voluntary and involuntary terminations.
>
> (f) Available community and area labor characteristics within
> the relevant geographical area including total population,
> workforce and existing unemployment by race, sex and
> national origin. Such data may be obtained from the Bureau of

Labor Statistics, Washington, DC, State and local employment
services, or other reliable sources. Recipient should identify the
sources of the data used.

(g) A detailed narrative statement setting forth the recipient's
existing employment policies and practices as defined in §
42.202(c).

72. Additionally, the Sheriff's Office and/or Onondaga County are obligated to generate

"EEOP Utilization Reports" that contains employment data, organized by race, national origin

and sex. *See* 28 C.F.R. § 42.301-.308.  These reports analyze an employer's workforce by race,

gender and national origin and notify recipients when they are underutilizing certain groups in

various job categories.  These reports warn of the underutilization.

73. Upon information and belief, the Sheriff's office and/or Onondaga County have not

complied with any of these requirements, despite having notice of their obligation and past

failure to do so. This reveals a deliberate and/or reckless disregard for the rights of female and

minority employees of the Sheriff's Office.

74. The Sheriff's Office and/or Onondaga County have also accepted multiple grants

from the Division of Criminal Justice Services (DCJS).   By accepting the awards, the Sheriff's

Office and/or County agreed to the "Non-Discrimination Requirements" of the Human Rights

Law:

I. Non-Discrimination Requirements: Pursuant to Article 15 of the Executive Law
(also known as the Human Rights Law) and all other State and Federal statutory
and constitutional non-discrimination provisions, the Contractor and
sub-contractors will not discriminate against any employee or applicant for
employment because of race, creed (religion), color, sex (including gender identity
or expression), national origin, sexual orientation, military status, age, disability,
predisposing genetic characteristic, marital status or domestic violence victim
status,...

J. Equal Opportunities for Minorities and Women, Minority and Women Owned

Business Enterprises: In accordance with Section 312 of the Executive Law and 5 NYCRR 143, if the Contract is: (i) a written agreement or purchase order instrument providing for a total expenditure in excess of $25,000.00, whereby a contracting State Agency is committed to expend or does expend funds in return for labor, services, supplies, equipment, materials or any combination of the foregoing, to be performed for, or rendered or furnished to the contracting State Agency, or ..., then the Contractor certifies and affirms that (i) it is subject to Article 15-A of the Executive Law which includes, but is not limited to, those provisions concerning the maximizing of opportunities for the participation of minority and women owned business enterprises and (ii) the following provisions shall apply and it is Contractor's equal employment opportunity policy that:

1. The Contractor shall not discriminate against employees or applicants for employment because of race, creed, color, national origin, sex, age, disability or marital status,

2. The Contractor shall make and document its conscientious and active efforts to employ and utilize minority group members and women in its work force on State contracts,

3. The Contractor shall undertake or continue existing programs of affirmative action to ensure that minority group members and women are afforded equal employment opportunities without discrimination. Affirmative action shall mean recruitment, employment, job assignment, promotion, upgrading, demotion, transfer, layoff, or termination and rates of pay or other forms of compensation.

75. Upon information and belief, the Sheriff's office and/or Onondaga County have also not complied with these requirements.

76. As a result of Defendants' unlawful actions and omissions, Plaintiff has been financially and personally harmed, subjected to humiliation and severe emotional distress for which she has sought and received medical treatment. Plainiff has suffered humiliation, indignity, shame, damage to her good name, and physical manifestations of said harm; all harms substantially and proximately caused by the acts and omissions of Defendants as set forth herein. Defendants have injured Plaintiff and she is entitled to compensation therefor.

## AS AND FOR A FIRST CAUSE OF ACTION
## PURSUANT TO FLSA AGAINST DEFENDANT
## COUNTY OF ONONDAGA FOR RETALIATION

77. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 76 above as if set forth fully herein.

78. Under 29 U.S.C. § 215(a)(3), it is unlawful to discriminate against Plaintiff because she made complaints alleging inadequate, non-feasible, and burdensome breastfeeding accommodations.

79. By engaging in the foregoing conduct, Defendant violated rights guaranteed to Plaintiff under the FLSA in that Plaintiff was subjected to disparate treatment, retaliation, a hostile work environment, and otherwise discriminated against in matters relating to her employment because she made such complaints.

80. Plaintiff sustained damages by reason of Defendant's wrongful actions and omissions and is entitled to compensation therefor.

### AS AND FOR A SECOND CAUSE OF ACTION PURSUANT TO TITLE VII AGAINST DEFENDANT COUNTY OF ONONDAGA FOR DISCRIMINATION BASED ON GENDER

81. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 80 above as if set forth fully herein.

82. By engaging in the foregoing conduct, Defendant violated rights guaranteed to Plaintiff under Title VII in that Plaintiff was subjected to disparate treatment, retaliation, a hostile work environment, and otherwise discriminated against in matters relating to her employment because of gender.

83. Plaintiff sustained damages by reason of Defendant's wrongful actions and omissions and is entitled to compensation therefor.

**AS AND FOR A THIRD CAUSE OF ACTION**
**PURSUANT TO THE NEW YORK HUMAN RIGHTS LAW**
**AGAINST DEFENDANT COUNTY OF ONONDAGA**
**FOR DISCRIMINATION BASED ON GENDER AND FAMILIAL STATUS**

84. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 83 above as if set forth fully herein.

85. By engaging in the foregoing conduct, Defendants violated rights guaranteed to Plaintiff under the New York Human Rights Law in that Plaintiff was subjected to disparate treatment, retaliation, a hostile work environment, and otherwise discriminated against in matters relating to her employment because of gender and/or familial status.

86. Plaintiff sustained damages by reason of Defendant's wrongful actions and omissions and is entitled to compensation therefor.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**PURSUANT TO THE NEW YORK HUMAN RIGHTS LAW**
**AGAINST DEFENDANTS SHELLEY, PASSINO, FISCHER,**
**BELCHER, YOUNG, ANDREWS, HILL, MURPHY, AND DOES**
**FOR DISCRIMINATION BASED ON GENDER AND FAMILIAL STATUS**

87. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 86 above as if set forth fully herein.

88. Defendants Shelley, Passino, Fischer, Belcher, Young, Andrews, Hill, Murphy, and Does, pursuant to their authority to do more than carry out personnel decisions made by others in the course of their employment, are considered "employers" under the Human Rights Law. Alternatively, said Defendants are "aiders and abettors" pursuant to N.Y. Exec. Law. § 296(6) and therefore their discrimination is unlawful.

89. Said Defendants violated rights guaranteed to Plaintiff under the Human Rights Law in that they subjected, or aided and abetted others in subjecting, Plaintiff to disparate treatment,

retaliation, a hostile work environment, and otherwise discriminated against Plaintiff in matters

relating to her employment because of gender and/or familial status.

90. Plaintiff sustained damages by reason of Defendants' wrongful actions and omissions

and is entitled to compensation therefor.

### AS AND FOR A FIFTH CAUSE OF ACTION
### PURSUANT TO 43 U.S.C. § 1983 AGAINST ALL DEFENDANTS
### FOR DISCRIMINATION BASED ON GENDER IN VIOLATION OF
### THE FOURTEENTH AMENDMENT

91. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 90 above as if set forth fully herein.

92. Defendants County of Onondaga, Shelley, Passino, Fischer, Belcher, Young,

Andrews, Hill, Murphy, and Does violated rights guaranteed to Plaintiff under the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution in that they

committed acts of discrimination and/or personally participated in the disparate treatment of,

continuation of a hostile work environment, and other discrimination against Plaintiff in matters

relating to her employment because of her gender.

93. Plaintiff sustained damages by reason of Defendants' wrongful actions and omissions

and is entitled to compensation therefor.

### AS AND FOR A SIXTH CAUSE OF ACTION
### PURSUANT TO TITLE VII AGAINST DEFENDANT
### COUNTY OF ONONDAGA FOR RETALIATION

94. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 93 above as if set forth fully herein.

95. By engaging in the foregoing conduct, Defendant violated rights guaranteed to

Plaintiff under Title VII in that Plaintiff was retaliated against for opposing discrimination and

for participating in protected activity.

96. Plaintiff sustained damages by reason of Defendant's wrongful actions and omissions and is entitled to compensation therefor.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## PURSUANT TO THE NEW YORK HUMAN RIGHTS LAW
## AGAINST DEFENDANT COUNTY OF ONONDAGA
## FOR RETALIATION

97. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 96 above as if set forth fully herein.

98. By engaging in the foregoing conduct, Defendant violated rights guaranteed to Plaintiff under the Human Rights Law in that Plaintiff was retaliated against for opposing discrimination and participating in protected activity.

99. Plaintiff sustained damages by reason of Defendant's wrongful actions and omissions and is entitled to compensation therefor.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## PURSUANT TO THE NEW YORK HUMAN RIGHTS LAW
## AGAINST DEFENDANTS SHELLEY, PASSINO, FISCHER,
## BELCHER, YOUNG, ANDREWS, HILL, MURPHY,
## AND DOES FOR RETALIATION

100. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 100 above as if set forth fully herein.

101. Defendants Shelley, Passino, Fischer, Belcher, Young, Andrews, Hill, Murphy, and Does, due to their power to do more than carry out personnel decisions made by others in the course of their employment, are considered "employers" under the Human Rights Law. Alternatively, said Defendants are "aiders and abettors" pursuant to N.Y. Exec. Law § 296(6) and therefore their retaliation is unlawful.

102. Said Defendants violated rights guaranteed to Plaintiff under the Human Rights Law in that they subjected, or aided and abetted others in subjecting, Plaintiff to retaliation and disparate treatment in matters relating to her employment because of her opposition to discrimination and participation in protected activity.

103. Plaintiff sustained damages by reason of Defendants' wrongful actions and omissions and is entitled to compensation therefor.

## AS AND FOR A NINTH CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS
## FOR RETALIATION IN VIOLATION OF
## THE FIRST AND FOURTEENTH AMENDMENTS

104. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 103 above as if set forth fully herein.

105. By engaging in the foregoing conduct, Defendants violated rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the United States Constitution in that Plaintiff was retaliated against for opposing gender discrimination in public employment and expression on matters of public concern.

106. Plaintiff sustained damages by reason of Defendants' wrongful actions and omissions and is entitled to compensation therefor.

## AS AND FOR A TENTH CAUSE OF ACTION
## PURSUANT TO NEW YORK COMMON LAW
## AGAINST DEFENDANTS SHELLEY, PASSINO, FISCHER,
## BELCHER, YOUNG, ANDREWS, HILL, MURPHY,
## AND DOES FOR TORTIOUS INTERFERENCE

107. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 106 above as if set forth fully herein.

108. By their aforementioned actions and omissions, Defendants intentionally interfered

with Plaintiff's employment with the County of Onondaga and the Collective Bargaining

Agreement between Defendant County and the Onondaga County Deputy Sheriffs Benevolent

Association.

109. Plaintiff sustained damages by reason of Defendants' wrongful actions and

omissions and is entitled to compensation therefor.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION
PURSUANT TO NEW YORK COMMON LAW
AGAINST DEFENDANTS SHELLEY, PASSINO, FISCHER,
BELCHER, YOUNG, ANDREWS, HILL, MURPHY,
AND DOES FOR *PRIMA FACIE* TORT**

110. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 109 above as if set forth fully herein.

111. Defendants intended to inflict harm upon the pecuniary interests of Plaintiff by

engaging in the aforementioned actions and omissions.

112. Defendants had no legal justification or excuse to act in such manner and their

actions and/or omissions were unlawful.

113.    The aforementioned acts and/or omissions of Defendants were intended to cause

harm and injury to Plaintiff.

114. Plaintiff sustained damages by reason of Defendants' wrongful actions and is entitled

to compensation therefor.

**WHEREFORE**, Plaintiff seeks judgment against Defendants, jointly and severally, as

follows:

a.    an Order enjoining Defendants from further violating Plaintiff's rights and

providing the following injunctive relief:

i.    Order Defendants to elevate Plaintiff to the Sergeant position and reimburse her for lost pay and benefits;

ii.    Require Defendants to review and correct all unconstitutional and discriminatory treatment and conduct within the Onondaga County Sheriff's Department;

iii.    Provide equal training, opportunities, terms, benefits, and pay to female employees in the Onondaga County Sheriff's Department;

iv.    Mandate comprehensive training and educational programs for employees about discrimination and retaliation; and

v.    Require annual reports demonstrating efforts and success at compliance in providing a discrimination and retaliation-free workplace.

b.    compensatory damages in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

c.    punitive damages as against the individual Defendants in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

d.    attorneys fees, costs, and disbursements of this action; and

e.    such other and further relief the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated:  April 17, 2025
        at Blossvale, New York

_____
A.J. Bosman, Esq.
Robert Strum, Esq.
Bosman Law, LLC
Attorneys for Plaintiff
3000 McConnellsville Road
Blossvale, New York 13308
Tel. (315) 820-4417

i.      Order Defendants to elevate Plaintiff to the Sergeant position and reimburse her for lost pay and benefits;

ii.     Require Defendants to review and correct all unconstitutional and discriminatory treatment and conduct within the Onondaga County Sheriff's Department;

iii.    Provide equal training, opportunities, terms, benefits, and pay to female employees in the Onondaga County Sheriff's Department;

iv.     Mandate comprehensive training and educational programs for employees about discrimination and retaliation; and

v.      Require annual reports demonstrating efforts and success at compliance in providing a discrimination and retaliation-free workplace.

b.      compensatory damages in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

c.      punitive damages as against the individual Defendants in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

d.      attorneys fees, costs, and disbursements of this action; and

e.      such other and further relief the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: April 17, 2025
       at Blossvale, New York

A.J. Bosman, Esq.
Robert Strum, Esq.
Bosman Law, LLC
Attorneys for Plaintiff
3000 McConnellsville Road
Blossvale, New York 13308
Tel. (315) 820-4417

-31-